OPINION
{¶ 1} This matter is before the Court on Defendant-Appellant Jonathan Lloyd's direct appeal from his conviction for unlawful sexual conduct with a minor. On June 2, 2003 Lloyd was indicted on one count of unlawful sexual conduct with a minor. The case proceeded to a jury trial, and the jury found Lloyd guilty as charged. The trial court sentenced Lloyd to five years community control and designated him as a sexually oriented offender. Lloyd appeals his conviction.
 I {¶ 2} During the weekend of March 21, 2003 the thirteen-year-old victim, KW, was staying at her friend Stephanie's house. On Friday evening, KW and Stephanie went to a local park where they saw Lloyd, his friend Matt Ortman, and others playing basketball. The girls talked with Lloyd, who asked Stephanie to call him some time.
 {¶ 3} The following day the girls called Lloyd and left a message for him. He returned the call and suggested that he and a friend pick up the girls up to go for a ride and then return to his house. The girls agreed and waited outside for Lloyd to pick them up. Soon Lloyd and his friend Ortman arrived in Lloyd's car. KW had met Ortman a couple of years earlier, when she was twelve. KW's mother discouraged the friendship and advised Ortman on more than one occasion that KW was only twelve years old.
 {¶ 4} The four drove around for a while and then returned to Lloyd's home and watched television in the living room. Before long, Lloyd and Stephanie went to Lloyd's bedroom, where he tried unsuccessfully to hit on her. Next, Lloyd and KW went to Lloyd's room alone and talked. Ortman and Stephanie soon joined them in the bedroom. Lloyd turned off the lights, and he and Ortman joked about having an orgy with the girls. Eventually, Stephanie and Ortman returned to the living room, leaving Lloyd and KW alone in the bedroom.
 {¶ 5} Lloyd told KW that he needed to pick out clothes to go out that night, and he asked for her advice. Lloyd and KW ended up trying on each others' clothes and then modeling their "new" clothes for Stephanie and Ortman. KW returned to Lloyd's room to put her own clothes back on while Lloyd was changing in the bathroom. KW testified that while she was changing, Lloyd walked in on her and started asking her to "do stuff" with him. KW declined and told Lloyd that she was only 13 years old. Nevertheless, the two began kissing. KW allowed Lloyd to remove her pants and underwear, and the two had intercourse.
 {¶ 6} Afterward, KW got dressed and walked out of the bedroom. She found Lloyd asking Stephanie if she had birth control pills to give to KW. Stephanie explained to Lloyd that it was too late to think about that. The four were back in the living room when Lloyd's family returned home. Lloyd jumped up and told the others to tell his mom that he was in the shower. Ortman escorted the girls to the door, and they walked back to Stephanie's.
 {¶ 7} Initially, KW did not tell anyone about having intercourse with Lloyd. Nearly one month later, KW learned that another girl, Rachel, who was the mother of Lloyd's child, and Rachel's mother were going to tell KW's mother that KW had had sexual intercourse with Lloyd. KW decided to tell her mother what had happened before Rachel could do so.
 {¶ 8} Matt Ortman also testified for the prosecution. He claimed that KW told him and Lloyd that she was 16 years old. Ortman confirmed that both he and Lloyd were 18.
 {¶ 9} Officer Gregory Lightcap, who investigated the case, was already familiar with Lloyd and his age, both at the time of the interview and on March 22, 2003. Officer Lightcap explained what LEADS is and stated that he ran a LEADS printout on Lloyd before the interview. The LEADS printout includes a suspect's date of birth. At the beginning of the interview, Lloyd confirmed that his birth date was January 17, 1985. Lloyd told Officer Lightcap that on March 22nd, KW claimed to be 16, and Lloyd admitted that he told KW that he was 18.
 {¶ 10} Lloyd presented no evidence on his own behalf. His only defense was that he was unaware of the victim's age.
 II {¶ 11} Lloyd's first assignment of error:
 {¶ 12} "The conviction should be reversed because Appellant was denied the right of confrontation, under the United States and Ohio Constitutions, with respect to the issue of whether he was eighteen years old at the time of the offense."
 {¶ 13} In his first assignment of error, Lloyd argues that because he was not able to cross-examine himself about his statement to Officer Lightcap regarding his birthday, that statement was inadmissible. While Lloyd acknowledges that such information would ordinarily be admissible as an admission of a party-opponent under Evid.R. 801(D)(2), he insists that a recent Supreme Court case has expanded the scope of the Confrontation Clause to prohibit introduction of such evidence. Crawford v.Washington (2004), 541 U.S. ___, 124 S.Ct. 1354. We believe that Lloyd's argument stretches Crawford well beyond any reasonable interpretation of the Court's opinion.
 {¶ 14} The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." On its very face, it appears that the Confrontation Clause comes into play only when a statement comes from a witness other than the accused himself. Moreover, Crawford supports this conclusion.
 {¶ 15} In Crawford the Supreme Court held that a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination of the witness. Crawford, 541 U.S. ___,124 S.Ct. 1354. Lloyd would have this Court expand this case to allow a defendant to prevent his own statements from being admitted into evidence against him merely by choosing not to testify. However, there is nothing in the Crawford opinion that supports such an application.
 {¶ 16} Crawford dealt with a statement given by the defendant's wife, not by the defendant. Moreover, although theCrawford Court explained at great length the history behind the Confrontation Clause, not one of the cases upon which the Court relied dealt with an accused's own statements. After a careful reading of Crawford, we find no reason to expand the application of the case to allow a defendant to protect himself from having his statements used against him simply by choosing not to testify. In short, the Confrontation Clause is simply inapplicable when the "witness" is the accused himself.
 {¶ 17} Lloyd's first assignment of error is without merit and is overruled.
 III {¶ 18} Lloyd's second assignment of error:
 {¶ 19} "The conviction should be reversed because there was insufficient evidence that at the time of the offense Appellant was eighteen years or older, and Appellant's constitutional right to due process of law was thus violated."
 {¶ 20} It has come to this Court's attention that although Lloyd included a second assignment of error in his original brief filed with the clerk, he failed to include those pages in every copy of his brief. Therefore, the State has not fully responded to Lloyd's second assignment of error. Lloyd's attorney failed to attend the requested oral argument. However, the State was advised of this failure at that time and was given the opportunity to address the issue, which is closely related to his first assignment of error. Despite Lloyd's oversight, we are prepared to address the merits of his second assignment of error.
 {¶ 21} Lloyd's argument here builds on his first assignment of error in that he claims that his conviction was not supported by sufficient evidence because there was not enough credible evidence to support the jury's conclusion that he was at least 18 years old at the time that he committed his crime. We disagree.
 {¶ 22} Lloyd's argument presupposes that his own admission to Officer Lightcap was inadmissible. However, this ignores the fact that Officer Lightcap also testified that he was aware of Lloyd's birth date and his age from a LEADS report. The jury also heard Matt Ortman's testimony that Lloyd was 18. Finally, in light of the fact that we have already held that Lloyd's statements to Officer Lightcap were admissible, we must also consider Lloyd's admission to Officer Lightcap that he had told KW on the day of the offense that he was 18 years old. All of this evidence taken together was more than sufficient to support the jury's finding that Lloyd was at least 18 years old when he committed the crime of unlawful sexual conduct with a minor.
 {¶ 23} Because Lloyd's conviction for unlawful sexual conduct with a minor was supported by sufficient evidence, his second assignment of error fails.
 IV {¶ 24} Having overruled both of Lloyd's assignments of error, the judgment of the trial court is AFFIRMED.
Fain, P.J. and Brogan, J., concur.